50  140
69  558

### JUDKINS v. HILL.

Where it appeared that there were declared at the election in Ward 4, in the city of Concord, twenty-seven more votes for county commissioner than were marked on the check-list, and still the deduction of these twenty-seven votes from the whole number cast for the respondent would not have affected the result, it was *held*, that from the mere fact of this discrepancy between the votes declared and the votes checked, the court could not infer that the election was fraudulently conducted in that ward, and reject its entire vote.

This is petition* of Edwin Judkins, to correct the count of the votes for county commissioner of Merrimack county for 1869, by rejecting the vote of ward 4, in the city of Concord, on the ground that the election there was fraudulently and illegally conducted; and thereupon to declare the petitioner to have been duly elected instead of Daniel E. Hill, who was declared by the presiding justice at the trial term to have been duly elected.

*Eastman, Page & Albin,* for petitioner.

*Tappan,* for respondent.

BELLOWS, C. J.   The votes as declared for county commissioner in 1869 were,—for Daniel E. Hill, 4,711; for Edwin Judkins, the next highest, 4,609—a plurality of 102.   From the testimony of John C. Thorn, the ward clerk, and the statement of the votes produced, it appears that the votes declared by the moderator of ward 4, in Concord, were,—for Daniel E. Hill, 371; for Edwin Judkins, 174; A. L. French, 1; in all, 546, or a plurality for Hill of 197.   So if that vote is wholly rejected, Hill would have failed of an election by some 95 votes.   The petitioner asks for the rejection of the entire vote of this ward upon the ground that the election was fraudulent, and the true state of the vote could not be ascertained.

It does not appear how the court counted the vote of ward 4, but perhaps it is safe to assume that it was according to the vote declared.†
The proof offered of the fraud is, that while upon the check-list there were 665 names, only 519 were checked as having voted for State and county officers; and so the votes declared for county commissioner were 27 more than appears by the check-list to have voted.   Upon this ground the petitioner asks that the election in this ward be adjudged fraudulent and void; alleging also by his petition that illegal and fraudulent votes were received and counted, and frauds committed, to such an extent and in such manner as to make it impossible to determine whether any votes were legally cast for the two candidates.

---

* This petition was in the nature of a petition for mandamus.   The prayer, among other things, was for the court " to make such order therein, or cause such writ to be issued, as shall declare your petitioner to have been elected, and place him in possession of said office," &c.     REPORTER.

† At the coming in of the returns at the trial term, the counsel for the petitioner moved to reject the vote of ward 4, and for a re-count.   NESMITH, J., after much argument and consideration, in conformity to the general practice, finally *held* that that court had no original jurisdiction, but was concluded by the returns; and that the petitioner's remedy, if he had any, was not at the trial term, but by a petition to the full bench at the law term.                    REPORTER.

Of these charges there appears to be no proof except what comes from the fact that more votes were declared than were checked on the list; and the question is submitted to us upon that ground, and we are asked to infer that the election was conducted fraudulently and ought to be set aside. The excess of votes declared over the names checked was about five in a hundred, and the question is, whether it was caused by fraud in the conduct of the election, or was accidental. This excess may have been caused by a failure to check all the names of persons voting; but although some discrepancy might naturally be expected, it would hardly seem probable that in a well conducted election the difference should be so great.

There may also have been some double voting, and there may have been some mistake in the counting: to some of these causes, or to all combined, the discrepancy may be due. If it was due to either of the two first causes, it would not in the absence of fraud in the conductors of the election affect the entire vote. If illegal votes were received, but not enough to change the majority, it would not invalidate the election. *First Parish in Sudbury* v. *Stearns*, 21 Pick. 148–154; *School District* v. *Gibbs*, 2 Cush. 39; *Ex-parte Murphy*, 7 Cow. 153; Angell & Ames on Corp. 101, and cases cited. Upon the same principle, if the discrepancy was due to a mistake in counting, it would not in the absence of fraud vitiate the election if the mistake did not change the majority. If the vote declared for county commissioner was twenty-seven more than were checked on the list, and this was occasioned by a mistake in the count, the case would be this: either the excess was put down for the petitioner, or for Hill, or part to each; but as there is no means of showing how it was, and as it might have been all counted against Judkins, it would perhaps be proper to consider that it was so counted; but if it was—and that is the most unfavorable view that can be taken of it against Hill—it could not have changed the. majority, which as declared was for Hill one hundred and two votes; and, deducting the twenty-seven votes, it would still leave him seventy-five majority.

If, from the fact of this discrepancy, the court ought to find that it was the result of fraud in the managers of the election, the court would hesitate long to count any votes cast at an election so tainted, upon the ground that with such proof of fraudulent and corrupt purposes no confidence could be entertained in coming to any reliable conclusion as to what votes were actually given.

We think, however, that no such inference of fraud can fairly be made. If it should be, we think many of the elections in this State would be invalidated. The presumption is that the election was honestly conducted, and the burthen of proof to show it otherwise is on the petitioner. Amidst the press and excitement of an election such a discrepancy might arise in numerous ways by mere mistake or accident, and without some other evidence pointing more directly to the existence of fraud, we should not be justified in finding it.

The case is now before us on such proof as the parties have seen fit to adduce, and we are called upon to decide upon what is before us; and we are of the opinion that, upon the mere fact of this discrepancy

between the names checked and the votes declared, we cannot properly infer that the election was fraudulently conducted.

The discrepancy in this case is somewhat unusual, and the petitioner charges fraud in the conduct of the election; and, in view of the importance of preserving the purity of the ballot-box, we are inclined, if the petitioner desires it, to put the cause in a way to bring about a fuller investigation of the facts; and for this purpose the cause may be sent to the trial term to be heard by the presiding judge.